## Kester *against* Rockel.

Where the vendor is in possession of land, and makes improvements on it, and afterwards the vendee enters into a contract to buy with full knowledge of all the circumstances, the jury are bound to believe it was the property of the vendor in the absence of countervailing proof, particularly when the vendee takes possession under the agreement, and enjoys it, and never offered to restore the possession, and shows no outstanding adverse title.

Where, by articles of agreement, the vendor is to give a good right, and a free deed, and if the purchaser should make the land free, the costs are to be deducted from the purchase money, and the purchaser afterwards takes out a warrant and patent, the administrator of the vendor may sue for the value of the purchase money due, without previously tendering a deed.

The vendee in such case has a right to an allowance for the sum paid for the patent, without regard to any change subsequently made in the price of obtaining the patent.

A survey which has never been returned to the land-office is not evidence of an adverse title without a warrant or other evidence of one besides its recital in the survey.

A vendee, under articles of agreement, who enters and continues in possession, must pay interest on the purchase money; but where he has been harassed or disturbed in his possession, or there has been wilful and vexatious delay, or gross or criminal laches on the part of the vendor, or where there are well-founded doubts of the title, or from neglect or otherwise for a length of time no administrator has been appointed to receive payment, it is for the jury to determine whether the vendee is to pay interest.

ERROR to the Common Pleas of *Northampton* county.

Henry Rockel, administrator of Martzel Kester deceased, brought an action of covenant against Philip Kester, and declared

II.—2 F*

[Kester v. Rockel.]

on the following sealed agreement. The defendant pleaded covenants performed, and a verdict and judgment were rendered for the plaintiff.

"Lehigh township, Northampton county, 20th of February 1816. This day appeared Mercellus Kester, as seller, and his son Philip Kester, as purchaser, and have agreed to the following contract of purchase, and have signed the same, and is as follows: The above-named seller, Mercellus Kester, sells his land plantation in Lehigh township, with thereunto belonging 150 acres of land, butting lands of Frederick Everhart, Jacob Anthony, William Deeter, and late Anton Solt and others, for the sum of £500, good passable money of Pennsylvania. The purchaser shall give to the seller or to his heirs, yearly, £20 from the £500, and if the seller should die, his children shall draw according to their age yearly, in which the purchaser shall have his share, and be a co-heir. Further, the seller promises to the purchaser a good right, and to give a free deed, and if the purchaser shall make the land free, the costs shall be taken from the said £500, or from that sum. Further, the purchaser promises to give his father every year, as long as he lives, 4 bushels of wheat, 21 bushels of rye, 13 bushels of corn, 12 bushels buckwheat, 15 lbs. hatchled flax, 20 lbs. tow, 1 bl. cider, 1 bl. winter cider, and as many apples as the seller shall want for himself and family. The purchaser must plough, manure, and bring in good order, $\frac{1}{4}$ of an acre of potatoes. The hoeing and seed the seller must attend to himself. Two head of horned cattle the seller can keep on the place, and one heifer he may raise—and this cattle shall go along with the purchaser's cattle. And the necessary fodder the purchaser shall give unto the seller. The necessary firewood the purchaser must bring to the seller, cut before his house. But if he should not be able to cut it any more, then the purchaser must cut it up for firewood (small) for him. If the seller should die before his wife Rachel, (born Deeter) then she has to have the one-half of the above *ausbehalt.* And from the first payment my wife Rachel shall have the interest as long as she lives. As now both parties are agreed, so they have signed this agreement with their own hands, and promise to fulfil the same the day and year herein before written."

The plaintiff then showed an application, 25th of October 1766, No. 2013, Thomas Williams, for 26 acres in Lehigh township, adjoining lands of Frederick Everhart and others, and survey 23d of November 1766, of 26 acres 69 perches thereon; also, a warrant to Philip Kester, 4th of June 1819, for 100 acres in Lehigh township; survey of 120¾ acres, 20th of July 1819; patent to Philip Kester for the last tract, 23d of May 1837. Also, a patent to Philip Kester, for 26 acres 39 perches, 30th of June 1837.

The plaintiff also proved by witnesses, that Martzel Kester died about the year 1816, having lived on the premises 25 years,

[Kester v. Rockel.]

improved them, and built a house there; that Philip afterwards lived in the house, and that the widow of Martzel had been dead eight or nine years.

The defendant showed payments of the surveying and patenting fees, and of the purchase money, according to an appraisement in 1837, under the Act of Assembly. A certificate from the surveyor general's office, that no warrant or application could be found on record in the name of Martzel or Mercellus Kester, for land in Northampton county. Also, a survey found among the papers of James Scull, D. S., 15th of August 1758, on warrant to David Mickeller, dated 3d of December 1746. He also proved that Philip Kester went into possession nearly forty years before the trial, and built a house for himself on the 120 acre tract; that Martzel's house was built by the neighbours; and after Philip built, he did all the farming.

BANKS (President) charged the jury as follows:

This suit is brought on an article of agreement, dated on the 20th of February 1816. Some evidence has been given to show how long the old man and his son Philip lived on this land. The old man had lived on the land long before his death, and died on it; he died in August 1816. The defendant has lived on the land ever since the death of his father. As regards the ownership between the father and Philip, this agreement is pretty conclusive evidence; and, in the absence of proof to the contrary, it would show that the land belonged to the old man, whether he claimed by settlement or otherwise. Philip no doubt worked on the land, but it may have been for his father, and in subservience to his will. There is no evidence that Philip ever claimed the land as his until after the agreement. The article is in itself inconsistent with a claim of right in himself. If the land was his, how can you account for this article of agreement? There is no proof that the agreement was not fairly obtained. Under these circumstances, you will consider the land as having belonged to the old man.

If a man buys a tract of land, and is to get a good title, he is not bound to pay unless he gets the title, except it be agreed that he shall pay without the title. In the absence of such stipulation, an adverse valid title in a third person would be a defence to an action brought to recover the purchase money. The defendant contends that there was and is an outstanding adverse title. To show this, he has given in evidence a survey made by James Scull in 1758. This survey recites a warrant dated in 1746. Is this evidence of title? It does not prove that there ever was such a warrant in existence for this land. The survey without the warrant, or some other evidence of it, besides the recital in the survey, and without the survey having been returned to the office, is no evidence of an adverse title having emanated from the land-office. As the case stands, it is no evidence at all of title.

[Kester v. Rockel.]

The article stipulates for the sale of the land, and for the support of the old man and old woman, and the survivor of them. It is a kind of family settlement, and regulates the property and its application during the life of the old man and the old woman, and makes a final disposition of it after their deaths. In this respect it answers the double purpose of a sale and a will. In case the old man should die before the money was paid, then and in that case it was to be equally divided among his children, the oldest to receive his portion first, and so in succession, until all the purchase money was paid, and each one had received his share. Has this purchase money been paid, or any part of it? Except what was paid into the land-office, there is no direct evidence of payment. The defendant relies on the presumption of payment arising from the lapse of more than twenty years as to some of the instalments, and upon other circumstances as aiding this presumption. When a debt such as this is, has been twenty years due, and this delay has not been accounted for, the law would presume that it was paid. In such a case there would be nothing to submit to a jury, for the law would rule the case, and it would be the duty of the court to instruct them. Here the old man was dead and no administrator for many years, therefore there would be no presumption of payment to him or his administrator. But, under the agreement, the money might have been paid to the children as it became due; and the presumption of payment would be applicable to these instalments that were due more than twenty years before suit brought: as to these the rule must prevail, and their payment be presumed, unless there is something connected with the case that rebuts this presumption. The title was not perfect until 1837. The land was not appraised by the commissioners twenty years before suit brought. Is it probable the defendant would pay the money to the heirs before he got his title? Is it probable that he would pay the money without administration? for if he did, and debts had been presented, his payment might have been disputed by the creditors. We then have all the circumstances as connected with those instalments that were due for twenty years before suit brought, and submit it to you to say whether they have been paid or not.

As to those instalments that had not been due twenty years when this suit was brought, the presumption could not arise from lapse of time merely—there must be something more—something that renders it probable that the debt was paid; circumstances which have this presumptive tendency, may be connected with the length of time, and satisfy a jury that the debt was paid. Is there any circumstance of that character in the evidence? If there is, you will give it its due weight. If there is anything in the evidence, which, if taken in connection with the length of time, satisfies you that those instalments which were not twenty years due, when suit was brought, have been paid, you will say

[Kester v. Rockel.]

so; if there is not, the plaintiff would be entitled to a verdict to that amount.

The defendant objects to the plaintiff's right to recover, because he has not received a title from the deceased, his administrators, or his heirs. The rule of law, as contended for by the defendant, is correct, but does it apply to this case? The defendant was to have a *good right* and a *free deed*. By the terms of the agreement, the purchaser had the right to take out the title himself. This is part of the agreement. If he took out this title himself, why should he not pay the purchase money, deducting what it cost him to take out the title. By the article, the old man conveyed all his equity to him. The mother is dead before suit brought, and has no claim for dower. The defendant has the legal and equitable estate. There is no claim against it. This deed is good against the heirs, the state, and the whole world. It conveys a *good right* and a *free deed*. Therefore it was not necessary that the heirs or administrators should make or tender him a deed.

It is contended, that the defendant having taken out the title himself, he is entitled to credit for the price of the land due the state at the time of the purchase from his father; after the purchase, the price of land due the state was reduced; hence the defendant contends that this reduction must enure to his benefit. I do not think so; and charge you, that he is only entitled to a credit for the amount he paid to the state and the officers.

The defendant contends that he is not bound to pay interest on the instalments, inasmuch as the title was not made to him. If a man purchase land, the purchase money to be paid in instalments, and covenants for a good title—if title is not made, he may tender the money, and demand a title. If title is not then made, this would suspend the interest. But if he goes into possession, and cultivates the land and does not tender the money, he is bound to pay interest. The use of the land is supposed to be equivalent to the interest of the money. If the plaintiff is entitled to recover the principal, he is entitled to the interest also.

The action is rightly brought in the name of the administrators.

The defendant excepted to the charge.

Errors assigned:

The court erred in their charge—

1. In directing the jury " that they should consider the land as having belonged to the old man."

2. That it was not necessary for deed to be tendered before suit brought.

3. That defendant was not entitled to credit for the price of the land as it was when he purchased it.

4. That defendant was bound to pay interest on the instalments.

5. That the action was rightly brought.

II. — 47

*Maxwell* and *Porter*, for plaintiff in error, on the first error, cited 3 *Whart.* 148. As to the second, on which they relied, they contended that the heirs should have released, before suit brought, all their right and interest in the land. 8 *Serg. & Rawle* 287 ; 4 *Watts* 465. The articles were not a conveyance. The vendor contracted to give the purchaser a good right and a free deed.

The defendant was entitled, by the terms of the agreement of 1816, to a credit for the amount it would have cost him to get a title at that time.

There was such gross laches on the part of the heirs in not having an administrator appointed to whom the money could be paid as to make the question of interest one for the jury. 5 *Serg. & Rawle* 202 ; 16 *Serg. & Rawle* 266 ; 6 *Watts* 207 ; 2 *Whart.* 75.

The action should have been ejectment in the name of the heirs.

*Hepburn* and *Ihrie, contra.* Previous to the agreement, Martzel Kester had an equitable title by improvement. Under that agreement Philip took possession, and, by patent, acquired a complete title, and cannot now set up an outstanding title, when the Statute of Limitations has confirmed his possession. 4 *Watts* 146. But the survey was no evidence of title, there being no proof of a warrant, but its recital in the survey. 9 *Serg. & Rawle* 39 ; 1 *Rawle* 404 ; 6 *Serg. & Rawle* 215 ; 3 *Binn.* 175 ; *Serg. Land Law* 121.

In *Southerland* v. *Purry*, (2 *P. R.* 146), which, however, is overruled in 9 *Watts* 311, where a deed was held necessary, before suit brought, there existed a right of dower : here there is none. There was nothing for the heirs to release. The defendant never tendered the purchase money, but remained in possession of the land. 13 *Serg. & Rawle* 386 ; 3 *P. R.* 451.

The defendant was entitled to credit only for the amount actually paid to the land-office. 16 *Serg. & Rawle* 261. The cost of making the land free is all he is to have by the articles.

There was no such laches on the part of the vendor as should exempt the defendant from the payment of interest. He enjoyed the use and undisturbed possession of the land. 6 *Watts* 207 ; 16 *Serg. & Rawle* 266 ; 2 *Whart.* 75.

The action was rightly brought by the administrator ; the purchase money would be personal assets in his hands.

The opinion of the Court was delivered by

ROGERS, J.—This is an action to recover the price of land sold by Martzel Kester to the defendant, Philip Kester. Any sum which may be recovered is assets for the payment of the debts of Martzel Kester, and consequently the suit is properly brought by his personal representative. The defendant excepts to that part of the charge in which the court come to the conclusion that under the circumstances proved, " the jury should consider the land as belonging to the old man." It was proved that the father was in

the possession of the land, that he made improvements upon it, and that afterwards, with a full knowledge of all the circumstances, entered into the contract on which the suit is brought. We agree with the court, that the jury were bound to believe that it was the property of the father, in the absence of countervailing proof, particularly as he had taken possession under the agreement, and was still in the enjoyment of the property, and had never made any offer to reinstate the parties in their former position. The defendant, on whom the burthen of proof was thrown, had altogether failed to show any adverse outstanding title. The survey made by James Scull in 1758, without the production of the warrant, although one is recited in the survey, is no evidence of title. A survey, as the court justly remark, without the warrant, or some other evidence of it besides the recital in the survey, *and without the survey having been returned to the office*, is no evidence of an adverse title.

Next, as to the tender of the deed. We are of opinion that by the warrant and patent granted to Philip Kester, in pursuance of the article, the defendant obtained a complete legal title. A deed from the administrator, or heirs, would be an act of supererogation, not in the contemplation of the parties, as it is expressly agreed that the defendant may complete the title by patent, but at the expense of the vendor. The defendant has a right to an allowance of the sum paid for that purpose, without regard to any change subsequently made in the price of obtaining the patent. The change enures to the benefit of the vendor.

The only exception which remains is that part of the charge in relation to the interest. It is settled, as is said, in *Fasholt* v. *Reed*, (16 *Serg. & Rawle* 266), that a purchaser by articles, entering and continuing in possession, must pay interest, though there may be cases where the jury would be justified in refusing it. The doubt is, whether there were not such facts in evidence as made it the duty of the court to leave the question of interest, as an open question, to be determined by the jury. Where the vendee has been harassed, as is said in the case cited, or disturbed in the possession, where there has been wilful and vexatious delay, or gross or criminal laches in the vendor, it may be left to a jury whether he shall recover interest. These instances are mentioned by way of example; and to the catalogue may be added, that where there are any well-founded doubts of the title, or where, in consequence of neglect, or from other cause, for a long time, no person is appointed to whom payment can be made, it should be referred to a jury to say whether the vendee should be required to pay interest. The interest is given by way of damages, and all the facts should be considered by them, under the direction of the court. The court gave a peremptory charge that if the plaintiff was entitled to recover the principal he was entitled to the interest also. This consequence does not follow; for this reason alone, we

are reluctantly compelled to reverse this case and order it for a new trial. The staleness of demand, perhaps some doubts as to the title, and, above all, the failure to have an administrator appointed, the jury may believe to be a valid reason for exempting the vendee from payment of interest, at least, in part.

Judgment reversed, and a *venire de novo* awarded.